LJW
6/30/2020

MJM/JKM: USAO#2019R00400

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO.** JKB-20-168 |
| v. | (Wire Fraud, 18 U.S.C. § 1343; False Claims, 18 U.S.C. § 287; Aggravated Identity Theft, 18 U.S.C. § 1028A; Aiding and Abetting, 18 U.S.C. § 2; Forfeiture, 18 U.S.C. § 981) |
| **CORY COLLIN FITZGERALD SANDERS,** | |
| Defendant. | |

\*\*\*\*\*\*

## INDICTMENT

### COUNTS ONE THROUGH NINE
(Wire Fraud)

The Grand Jury for the District of Maryland charges that:

#### Introduction

1. At all times material to this Indictment, **CORY COLLIN FITZGERALD SANDERS ("SANDERS")** resided in Maryland. Between 2015 and approximately March 2016, he lived in College Park, Maryland, and from March 2016 to 2019, he lived in Hagerstown, Maryland.

2. In June 2014, **SANDERS** formed **SANDTECH LLC ("SANDTECH")** as a Maryland limited liability company and stated in the Articles of Organization that its business was the sale of video teleconference hardware to the United States Department of Defense and federal government. **SANDERS** was the sole owner, agent and president of **SANDTECH**.

3. In October 2014, **SANDERS** opened a bank account at Capitol One Bank ending in \*5777 in the name of **SANDTECH**. **SANDERS** was the sole signer on the account.

4. In March 2016, **SANDERS** formed **CYCORP TECHNOLOGIES LLC** (**"CYCORP TECHNOLOGIES"**) as a new Maryland limited liability company and stated in the

1

Articles of Organization that it was an "audio visual video teleconference company." **SANDERS** was the sole owner, agent and president of **CYCORP TECHNOLOGIES**.

5. In May 2016, **SANDERS** opened a bank account at BB&T ending in *8626 in the name of **CYCORP TECHNOLOGIES**. **SANDERS** was the sole signer on the account.

6. In June 2016, **SANDERS** filed Articles of Cancellation with the State of Maryland to terminate **SANDTECH**. At the time, **SANDTECH** had existing contracts with federal government agencies.

At all times material to this Indictment:

7. The following United States government departments and agencies were part of the executive branch:

   a. Department of Defense;
   b. United States Marine Corps;
   c. United States Navy;
   d. United States Army; and
   e. Department of Labor.

8. Polycom, Inc., ("Polycom") was a manufacturer of electronic communications hardware and software, and provided warranty coverage for its products. Polycom maintained relationships with certain companies called "partners" which were authorized to buy directly from Polycom and/or distribute Polycom's new and warrantied products.

9. Cisco Systems, Inc., ("Cisco") was a manufacturer and provider of network services and communications equipment, and provided warranty coverage for its products. Cisco maintained relationships with certain companies called "partners" which were authorized to buy directly from Cisco and/or distribute Cisco's new and warrantied products.

10. United States government contracting requirements stated that procurement was restricted to new, warrantied electronic equipment. In part, this requirement reflected the government's need to maintain the security of its electronic equipment.

## Small Business Contracting with the Federal Government

11. When United States government departments and agencies needed to acquire goods or services, they were required to comply with federal acquisition regulations ("FAR"). Businesses that wanted to contract with the United States were required to register on the Systems for Award Management computer database ("SAM.gov"), which was maintained by the General Services Administration. SAM.gov required registrants to provide a nine-digit DUNS (Data Universal Numbering System) number from Dun & Bradstreet.

12. When a business registered on SAM.gov, the business received its own identifying number and created a profile containing the address, contact information and banking information necessary to receive payment. The SAM.gov-registered business was eligible to respond to "requests for quotations" ("RFQs") posted by any federal agency on a computer system called "FedBid.com." "RFQs" contained agency specifications for specific contracting needs, including for example, in the case of computer equipment or hardware systems, the requirement that the electronic equipment be brand new and under manufacturer's warranty.

13. FedBid.com received agency RFQs, posted the RFQs to a database searchable by businesses registered on SAM.gov, collected any bids placed by prospective vendors, ranked the bids by price from lowest to highest, and furnished the list to the agency contracting officer. All RFQs and bids received unique numbers. When the agency awarded an acquisition contract through FedBid.com, the contract provided when the successful bidder was required to fulfill the contract, what the bidder was contracting to provide, how the successful bidder was to invoice the particular government agency, and how the successful bidder would receive payment.

14. FedBid.com was able to access information on previous contract performance by a SAM.gov registrant, including the agency for a contract, and positive or negative information about contract performance, and provided the contract performance information to a government employee considering contract bids.

15. Businesses accessed SAM.gov and Fedbid.com over the internet using interstate wires and signals. Federal agencies communicated through FedBid.com with bidders on RFQs. Businesses submitted invoices to federal agencies to request payment for goods or services through interstate wires and signals, including through email and/or by electronically uploading invoices to federal government agency websites. Businesses provided their bank account details to government agencies over interstate wires and signals, and received payment over interstate wires and signals directly to their bank accounts.

16. The Defense Finance and Accounting System ("DFAS") administered payment for acquisitions for the Department of Defense ("DOD") and the military including the United States Marine Corps ("USMC"), United States Navy, and United States Army. DOD maintained a computer system called Wide Area Work Flow ("WAWF"). WAWF permitted contractors to create invoices for services and equipment provided to DOD or its components electronically. The server for WAWF was located in Utah.

### The Scheme to Defraud

17. From on or about February 10, 2015, to on or about June 6, 2018, **SANDERS** devised and intended to devise a scheme and artifice to defraud the United States, its departments and agencies, and to obtain money and property from those departments and agencies by means of materially false and fraudulent pretenses, representations, and promises.

18. It was part of the scheme and artifice to defraud that **SANDERS** registered **SANDTECH** and **CYCORP TECHNOLOGIES** on SAM.gov and used FedBid.com to place

4

bids on RFQs on behalf of **SANDTECH** and **CYCORP TECHNOLOGIES** to provide various federal government agencies with telecommunications equipment and services. The contract specifications required **SANDTECH** and **CYCORP TECHNOLOGIES** to provide new telecommunications equipment which was under warranty.

19. It was further part of the scheme and artifice to defraud that **SANDERS** caused **SANDTECH** and **CYCORP TECHNOLOGIES** to enter into contracts with federal government agencies to provide new telecommunications equipment which was under warranty.

20. It was further part of the scheme and artifice to defraud that **SANDERS** communicated with contracting officials at federal government agencies by telephone and email on behalf of **SANDTECH** and **CYCORP TECHNOLOGIES** to place bids and ask or answer questions.

21. It was further part of the scheme and artifice to defraud that in communications with government contracting officials on behalf of his companies, **SANDERS** promised to provide telecommunications equipment that was brand new and under warranty to meet the express needs of the contracting government agencies and the requirements of their contracts.

22. It was a part of the scheme and artifice to defraud that **SANDERS** used email addresses including collin@sandtech.org and info@sandtech.org to send and receive emails on behalf of **SANDTECH**.

23. It was further part of the scheme and artifice to defraud that **SANDERS** formed **CYCORP TECHNOLOGIES** and later dissolved **SANDTECH** after **SANDERS** caused **SANDTECH** to fail to perform contracts with the United States Army and Department of Labor ("DOL"), which were subsequently terminated for cause.

24. It was a further part of the scheme and artifice to defraud that **SANDERS** contracted with GoDaddy.com to host a website for **CYCORP TECHNOLOGIES** and associated

email addresses such as corys@cycorptechnologies.com, support@cycorptechnologies.com, and contracts@cycorptechnologies.com, which **SANDERS** used to send and receive emails on behalf of **CYCORP TECHNOLOGIES**.

25. It was a further part of the scheme and artifice to defraud that **SANDERS** operated **CYCORP TECHNOLOGIES** from his home in Hagerstown but at times, used other addresses such as 1629 K Street, Suite 300, Washington, D.C.

26. It was a further part of the scheme and artifice to defraud that **SANDERS** falsely represented to government officials that the name of **SANDTECH** was changed to **CYCORP TECHNOLOGIES** so **SANDERS** could invoice **SANDTECH** contracts as **CYCORP TECHNOLOGIES**, when **SANDERS** knew that **SANDTECH** and **CYCORP TECHNOLOGIES** were separate business entities.

27. It was further part of the scheme and artifice to defraud that in his communications with contracting officials, **SANDERS** provided false information about the delivery, source, warranty, and/or condition of electronic equipment provided by his companies, to include misrepresentations that the equipment was new and protected by the manufacturer's warranty when he knew that the equipment was not new, or new but not under warranty, or procured through unauthorized channels.

28. It was a further part of the scheme and artifice to defraud that in his communications with contracting officials, **SANDERS** provided false information and false documents about the credentials, certifications, and qualifications of **CYCORP TECHNOLOGIES** and about **CYCORP TECHNOLOGIES**'s relationship with Polycom and Cisco, to include forged and fabricated documents falsely certifying the status of **CYCORP TECHNOLOGIES** as an authorized partner of Polycom and Cisco.

29. It was further part of the scheme and artifice to defraud that **SANDERS** used email or the internet to submit invoices to contracting government departments and agencies, which invoices requested payment for **SANDTECH** or **CYCORP TECHNOLOGIES** when the contract performance was non-existent or deficient and when **SANDERS** had misrepresented the status of his company as an authorized partner of Polycom.

30. It was a further part of the scheme and artifice to defraud that **SANDERS** used invoices on behalf of **SANDTECH** and **CYCORP TECHNOLOGIES** so that the contracting government departments and agencies would pay for non-existent or deficient performance by electronic deposit into business bank accounts.

## The Charge

31. On or about the dates indicated below, in the District of Maryland and elsewhere, the defendant,

**CORY COLLIN FITZGERALD SANDERS,**

having devised and intending to devise the scheme and artifice to defraud described above, transmitted and caused to be transmitted by means of wire and radio communication in interstate commerce the writings, signs, signals, pictures, and sounds described below for the purpose of executing such scheme and artifice to defraud; namely,

| Count | Date | Agency | Contract No. | Nature of Transmission | Route |
|---|---|---|---|---|---|
| 1 | 7/14/2015 | USMC | 15-0180, 15-0096 | Email to contracting official C.M. stating that equipment to be provided by **SANDTECH** was brand new with Cisco maintenance | Maryland to Virginia |
| 2 | 8/18/2015 | USMC | 15-0180 | Invoice to DFAS created on WAWF requesting payment of $6,904.09 to **SANDTECH** | Maryland to Utah |
| 3 | 8/27/2015 | USMC | 15-0180 | Electronic payment of $6,904.09 by DFAS to Capital One Bank account *5777 | Ohio to Maryland |

7

| Count | Date | Agency | Contract No. | Nature of Transmission | Route |
|---|---|---|---|---|---|
| 4 | 10/21/2015 | USMC | 15-0096 | Invoice to DFAS created on WAWF requesting payment of $7,002.96 to **SANDTECH** | Maryland to Utah |
| 5 | 10/29/2015 | USMC | 15-0096 | Electronic payment of $7,002.96 by DFAS to Capital One Bank account *5777 | Ohio to Maryland |
| 6 | 4/22/2016 | DOL | 16-0083 | Email to contracting official L.E. with invoice attached requesting payment of $80,752 to **CYCORP TECHNOLOGIES** for Polycom maintenance | Maryland to Texas |
| 7 | 1/23/2017 | Navy | 17-0117 | Email to contracting official D.O. with a forged certificate attached stating that **CYCORP TECHNOLOGIES** was a "Gold Certified Partner" of Cisco | Maryland to Virginia |
| 8 | 7/31/2017 | DOL | 17-0067 | Electronic payment of $68,000 by DOL to BB&T account *8626 | District of Columbia to Maryland |
| 9 | 6/6/2018 | DOL | 17-0067 | Email to contracting official R.J. with letter attached falsely stating that **CYCORP TECHNOLOGIES** was an Authorized Partner of Polycom and bearing the signature of Polycom official B.H. | Maryland to District of Columbia |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS TEN AND ELEVEN
### (False Claims)

The Grand Jury for the District of Maryland further charges that:

1. The allegations set forth in Paragraphs 1 through 30 of Counts One through Nine are incorporated by reference here.

2. On or about the dates indicated below, in the District of Maryland and elsewhere, the defendant,

**CORY COLLIN FITZGERALD SANDERS,**

made and presented to persons and officers in the civil, military, and naval service of the United States, and to departments and agencies thereof, claims upon and against the United States and departments and agencies thereof, as described below, knowing such claims to be false, fictitious, and fraudulent; to wit, the defendant submitted the following invoices on behalf of **SANDTECH** knowing that **SANDTECH** rendered materially deficient performance by providing electronic equipment that was not brand new and/or not protected by manufacturer's warranty:

| Count | Date | Agency | Contract No. | Invoice Amount |
|---|---|---|---|---|
| 10 | 8/18/2015 | USMC | 15-0180 | $6,904.09 |
| 11 | 10/21/2015 | USMC | 15-0096 | $7,002.96 |

18 U.S.C. § 287
18 U.S.C. § 2

## COUNT TWELVE
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1. The allegations set forth in Paragraphs 1 through 30 of Counts One through Nine are incorporated by reference here.

2. On or about June 6, 2018, in the District of Maryland and elsewhere, the defendant,

**CORY COLLIN FITZGERALD SANDERS,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud as charged in Count Nine of this Indictment, knowing that the means of identification belonged to another person; to wit, the defendant used the name and signature of B.H, a Polycom official, in a forged letter of certification dated January 8, 2016, which stated that **CYCORP TECHNOLOGIES** met requirements for certification and specialization with Polycom and was therefore qualified to sell particular Polycom products and services, and transferred the forged letter of certification to a contracting official of the U.S. Department of Labor.

18 U.S.C. § 1028A(a)(1), (c)(5)
18 U.S.C. § 2

## FORFEITURE

The Grand Jury for the District of Maryland further charges that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that, in the event of the defendant's conviction on Counts One through Nine of this Indictment, the United States will seek forfeiture as a part of any sentence, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. As a result of the offenses charged in Counts One through Nine of this Indictment, the defendant,

**CORY COLLIN FITZGERALD SANDERS,**

shall forfeit to the United States any and all property, real or personal, constituting, or derived from, proceeds traceable to such offenses.

3. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property of the defendant pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Robert K. Hur
United States Attorney

A TRUE BILL:

Foreperson

_7-1-20_
Date