IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **v.** | * | **CRIMINAL NO. JKB-20-0168** |
| **CORY COLLIN FITZGERALD SANDERS** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM AND ORDER

Presently pending before the Court is Defendant's Motion to Dismiss Count Sixteen of the Superseding Indictment which charges him with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. (ECF No. 37.) Defendant argues that Count Sixteen must be dismissed because that Count, as charged, fails to establish that he *used* a means of identification of another person as prohibited by that statute. The Government opposes this Motion on two grounds. (*See generally* ECF No. 41.) First, it argues that Defendant's challenge to the Superseding Indictment is, in reality, a challenge to the sufficiency of the Government's evidence and therefore should only be "consider[ed] if raised by the Defendant at the conclusion of the evidence." (*Id.* at 5.) Second, it argues that—on the merits—Defendant's Motion should be denied because Defendant's conduct satisfies the *actus reus* requirements of § 1028A. (*Id.* at 5–11.) For the following reasons, Defendant's Motion to Dismiss Count Sixteen (ECF No. 37) is DENIED without prejudice.

### I.  *Background*

Count Sixteen of the Superseding Indictment charges that Defendant:

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud as charged in Count Ten of this Superseding Indictment, and false document as charged in Count Fifteen of this Superseding

1

> Indictment, knowing that the means of identification belonged to another person; to wit, the defendant used the name and signature of B.H., a Polycom official, in a forged letter of certification dated January 8, 2016, which stated that CYCORP TECHNOLOGIES met requirements for certification and specialization with Polycom and was therefore qualified to sell particular Polycom products and services, and transferred the forged letter of certification to a contracting official of the U.S. Department of Labor.

(ECF No. 25 at 13.)

Underlying this Count is an alleged scheme by Defendant to defraud the United States by, *inter alia*, falsely representing that he was an authorized partner of Polycom and Cisco—two companies that provided electronic communications hardware and software to various government contracts. (*See id.* ¶¶ 28–29; ECF No. 41 at 2.) As part of this fraud, Defendant allegedly submitted forged documents certifying his relationship with both companies. (*See* ECF Nos. 37-1, 37-2.) Critical here, the Polycom certification included the signature block of Barb Huelskamp ("B.H."), Polycom's Vice President of Americas Channel Sales. (ECF No. 37-1.) Defendant argues, and the Government does not dispute, that this signature block is merely a stylization and "Barbara Huelskamp did not generate, sign, or review Polycom certificates" which were instead "generate[d] through Polycom's online tool." (ECF No. 37 at 2.)

The Superseding Indictment charges that the submission of this forged document constitutes Aggravated Identity Theft in violation of 18 U.S.C. § 1028A, which establishes that: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." *Id.*

## *II.     Ripeness and Legal Standard*

As an initial matter, the Government argues that the gravamen of Defendant's challenge is an attack on the sufficiency of the evidence rather than a claim that the Indictment fails to properly charge an offense. (ECF No. 41 at 5.) It notes that "[t]he Federal Rules of Criminal Procedure do not provide for 'summary judgment' and such a ruling is sought here." (*Id.* (citing *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021).) However, the Fourth Circuit has held that pretrial dismissals that consider evidence beyond the indictment may be "procedurally appropriate under Rule 12(b)(2)" if "the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." *United States v. Weaver*, 659 F.3d 353, 355 n.* (4th Cir. 2011) (collecting cases).

Here, while the Government does not appear to dispute the evidence,[1] it does "request[] that the Court deny the Motion to Dismiss and consider the issue if raised by the Defendant at the conclusion of the evidence." (ECF No. 41 at 5.) Because the Government objects to pretrial disposition of the motion, dismissal of Count Sixteen is procedurally proper at this juncture if, and only if, the Superseding Indictment itself fails to state an offense.

To warrant dismissal for failure to state an offense, the "defendant must demonstrate that the allegations contained in the indictment, even if true, fail to state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). "To overcome such a motion, the indictment must include every essential element of the offense [and in] general, it is 'sufficient that an indictment set forth the offense in the words of the statute itself.'" *United States v. Burks*, 746 F. App'x 191, 198 (4th Cir. 2018) (quoting *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014)).

---

[1] In response to a prior Order of this Court, the parties affirmed that no additional evidence beyond that in the papers needed to be presented for the Court's consideration of the present Motion. (*See* ECF Nos. 42, 43.)

3

### *III. Analysis*

The parties agree that whether Count Sixteen charges an offense turns on whether the inclusion of B.H.'s signature on the Polycom certification constitutes a "use" of B.H.'s identity within the meaning of § 1028A(a)(1). However, their arguments on this score are predicated on evidence beyond the indictment, such as the nature of B.H.'s signature and its role in validating the Polycom certification. Given the thoroughness of the briefing, and the potential utility to the parties in further proceedings, the Court finds it appropriate to resolve the parties' dispute regarding statutory interpretation despite the fact that a more limited analysis would suffice to show that the indictment is facially sufficient.

#### *A. Use as Impersonation*

Defendant first argues that the inclusion of B.H.'s signature does not constitute a "use" of her identity because Defendant did not "impersonate or pass himself off as the Polycom representative." (ECF No. 37 at 8.) Two Circuits, the First and Ninth, have endorsed this "limited, context-specific" reading of "use" in § 1028A, concluding that it "require[s] that the defendant attempt to pass him or herself off as another person or purport to take some other action on another person's behalf." *United States v. Hong*, 938 F.3d 1040, 1050–51 (9th Cir. 2019); *see also United States v. Berroa*, 856 F.3d 141, 157 (1st Cir. 2017) ("[W]e read the term 'use' to require that the defendant attempt to pass him or herself off as another person or purport to take some other action on another person's behalf.").

These Circuits have begun with the proposition that "'use' cannot be given its broadest possible meaning, which would subsume the separate statutory terms 'transfer[]' and 'possess[].'" *Berroa*, 856 F.3d at 156; *see also United States v. Miller*, 734 F.3d 530, 541 (6th Cir. 2013) (emphasis in original) (concluding that it was more likely that the "dictionary definition of 'uses'

4

is narrowed by its placement *near* and *after* 'transfers' and 'possesses,' both of which are specific kinds of use."). Moreover, "[t]o interpret 'use' broadly 'could encompass every instance of specified criminal misconduct in which the defendant speaks or writes a third party's name[,]'" *Hong*, 938 F.3d at 1051, an "extreme result" that courts should "not lightly presume that Congress intended[.]" *Berroa*, 856 F.3d at 156. The legislative history belies such a broad purpose. The House Report "provide[s] several examples of identity theft[,] . . . each of [which] involved the defendant's use of personal information to pass him or herself off as another person, or the transfer of such information to a third party for use in a similar manner." *Id.* (citing H.R. Rep. No. 105-528, at 5–6 (2004), *reprinted in* 2004 U.S.C.C.A.N. 779, 781–82); *see also Miller*, 734 F.3d at 541 ("[T]here is nothing in the legislative history to indicate conclusively that Congress intended § 1028A to cover defendants falsely claiming that other individuals did things that they actually did not do.").

While those cases provide a compelling reconciliation of the text, structure, and legislative history of § 1028A, adoption of this line of reasoning appears implicitly foreclosed by the Fourth Circuit's decision in *United States v. Abdelshafi*, 592 F.3d 602 (4th Cir. 2010). There, the Fourth Circuit upheld convictions under § 1028A of a provider of medical transportation services who "not only inflated mileage amounts, but also submitted claim forms for trips that did not, in fact, occur." *Id.* at 606. The Fourth Circuit's holding is inconsistent with the narrower interpretation of "uses" because the defendant in that case did not "pass him or herself off as another person or purport to take some other action on another person's behalf." *Hong*, 938 F.3d at 1050–51. Accordingly, it would appear that the Court cannot adopt the narrower approach adopted by the First and Ninth Circuits.

### B. *Plain Meaning of Use and its Limits*

Rather, the holding in *Abdelfashi* appears more in line with the four Circuits—the Second, Fifth, Sixth, and Eleventh—which have endorsed a "plain-meaning" interpretation of the word "uses" in § 1028A. That "dictionary definition of 'use' is, in relevant part, 'to put into action or service,' 'to avail oneself of,' or to 'employ.'" *See, e.g., Wedd*, 993 F.3d at 122; *United States v. Medlock*, 792 F.3d 700, 705 (6th Cir. 2015) ("The word 'use' in the statute must be given its 'ordinary and natural' meaning, a meaning variously defined as 'to convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'").[2] Although this definition of "uses" is broader than the one informed by legislative history, it too has meaningful limitations. *See Miller*, 734 F.3d at 541 ("[T]he meaning of 'uses' is not as expansive as the government suggests and that term must have practical boundaries, particularly in cases such as this where the only 'means of identification' used is a name."). Most importantly, "use" is not "broad enough to reach the mere act of saying that the persons did something they in fact did not do." *Wedd*, 993 F.3d at 124 (quoting *Miller*, 734 F.3d at 542) (emphasis omitted). Given that the only alternative provided by the prior caselaw is foreclosed, and Defendant does not offer a third plausible interpretation of use, the Court adopts the scope of "uses" as it has been interpreted in these Circuits.

### C. *Application to Defendant's Offense*

Applying this definition, the Government argues that Defendant's conduct squarely constitutes the "use" of B.H.'s name under the reasoning of *United States v. Munksgard*, 913 F.3d

---

[2] In *Miller*, the Sixth Circuit appeared to favor the narrow view of "uses" applied by the First and Ninth Circuits, though it concluded that it was "[c]onfronted with two reasonable interpretations of 'uses' and no conclusive guidance from the legislative history." 734 F.3d at 542. Later cases have made clear, however, that the Sixth Circuit now concludes that "[t]o 'use' a means of identification in this setting is 'to convert to one's service' or 'to employ' the means of identification." *United States v. White*, 882 F.3d 624, 646 (6th Cir. 2018).

1327 (11th Cir. 2019). There, the Eleventh Circuit upheld a conviction under § 1028A where defendant "forged another person's name [and signature] to a surveying contract that he submitted to a bank in support of his loan application." *Id.* at 1330. In addition to *Munksgard*, it is notable that even Circuits that apply a narrowed definition of "uses" have "affirmed convictions for aggravated identity theft where defendants have 'purported to take some other action on another person's behalf' through impersonation or forgery." *Hong*, 938 F.3d at 1051 n.8 (citing *Munksgard*, 913 F.3d at 1330); *see also United States v. Morel*, 885 F.3d 17, 23 (1st Cir. 2018) ("[Defendant's] actions here easily meet [the definition of 'use'. Defendant] deposited a check made payable to JRM bearing an endorsement purporting to be JRM's signature, despite the fact that she knew the signature had been forged.").

Defendant rejoins that his case is more analogous to the facts of *Miller*, where "the defendant wrote down the names of his business partners on a document purporting to be minutes of a meeting wherein they authorized him to apply for a (fraudulent) bank loan[,]" *Medlock*, 792 F.3d at 706 (discussing *Miller*), though, in fact, there had been no meeting and no agreement. *Miller*, 734 F.3d at 534. Nonetheless, the Sixth Circuit—relying in part on the rule of lenity— concluded that Miller had not committed aggravated identity theft because he "misrepresented only that [his partners] had voted to give him authority to act on behalf of [the company]. Miller lying about whether [his partners] gave him authority to act on behalf of the company [wa]s conceptually distinct from Miller acting on their behalf." *Id.* at 541 n.5; *United States v. Michael*, 882 F.3d 624, 628 (6th Cir. 2018) (emphases in original) ("Miller's lies about what other individuals did . . . were insufficient [to support an aggravated identity theft charge] where he acted on behalf of *an entity* rather than on behalf of *individuals*."). The Fourth Circuit has similarly concluded that falsely claiming authority to act on behalf of a corporation does not constitute

7

aggravated identity theft because the "identity theft statutes are fatally ambiguous regarding whether they include as a criminal offense the unauthorized use of the means of identification of a corporation." *United States v. Hilton*, 701 F.3d 959, 969 (4th Cir. 2012).

Attempting to reconcile *Munksgard* and *Miller* reveals a profound ambiguity about whether a defendant commits aggravated identity theft when he or she falsely represents to act with authority from a corporation but does so by invoking the name of a particular corporate agent. In these cases, it is unclear whether the inclusion of the individual's name constitutes a "use" of that name or whether it instead is "the mere act of saying that the persons did something they in fact did not do"—i.e., that a person affirmed a particular corporate action when they in fact did not. *Wedd*, 993 F.3d at 124 (quoting *Miller*, 734 F.3d at 542) (emphasis omitted). Although there are limited data points, even those few cases suggest that the distinction between the former and the latter is intensely fact-specific. On one set of facts, an individual purportedly reviewing, approving, and signing a contract may sufficiently center the focus on that individual that the fact that his signature is made solely on behalf of a corporation feels collateral and inconsequential to the § 1028A analysis. *Munksgard*, 913 F.3d at 1334 ("On plain meaning alone, therefore, it seems clear to us that Munksgard 'used' a means of identification in that he 'employed' Morris's name in order to procure a bank loan.").[3] On different facts, the fraudulent inclusion of partners' names to informally ratify a corporate decision may seem more like a defendant "act[ing] on behalf of *an entity* rather than on behalf of *individuals*"—an act that falls outside the scope of § 1028A. *Michael*, 882 F.3d at 628 (emphases in original) (citing *Miller*, 734 F.3d at 541 n.5).

---

[3] Indeed, it seems odd to say that the defendant "employed" the signatory's *name* in *Munksgard* (rather than the individual's title or corporate role) where defendant submitted other contracts—signed by fictional persons (but in the name of real companies)—which also sufficed to defraud the bank. *Id.* at 1330.

8

Considering the Indictment in light of these persuasive precedents, it is sufficient to withstand a facial challenge. *See Burks*, 746 F. App'x at 198. It properly alleges that the Defendant "did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud." (ECF No. 25 at 13.) Further, to the extent it makes factual assertions about the use of B.H.'s signature, the Superseding Indictment does not allege that B.H.'s signature was auto-generated, that B.H. did not review Polycom certifications, or that B.H.'s signature was a stylization rather than a legally necessary component of those certifications. Absent these facts, the Court cannot conclude that the allegation that Defendant "used the name and signature of B.H., a Polycom official, in a forged letter of certification"—if true—categorically fails to state an offense, as those unadorned facts fall squarely within the ambit of § 1028A. (*Id.*; *see also id.* at 12 (alleging Defendant "submitted [a] letter falsely stating that [his company] was an Authorized Partner of Polycom and bearing the signature of Polycom official B.H., when in truth and in fact, [Defendant's company] was not an Authorized Partner of Polycom and B.H. did not authorize her signature to be applied to the letter.").)

In sum, while the Court harbors grave doubts that § 1028A was intended to criminalize the forging of corporate documents that coincidentally contain auto-generated signatures or that "uses"—in context—can be read broadly enough to unambiguously do so. It cannot, however, dismiss Count Sixteen without overstepping its present procedural authority by looking beyond the Indictment without the Government's agreement that the Motion is ripe for pretrial disposition. Accordingly, it must deny Defendant's Motion without prejudice to reconsideration until: (1) the Government agrees that the Motion is ripe for pretrial disposition or (2) the close of evidence.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Count Sixteen (ECF No. 37) is DENIED without prejudice.

DATED this __27__ day of May, 2022.

BY THE COURT:

*/s/ James K. Bredar*

James K. Bredar
Chief Judge