## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| v. | * | CRIMINAL NO. JKB-20-0168 |
| **CORY COLLIN FITZGERALD SANDERS,** | * | |
| **Defendant.** | * | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S CONSOLIDATED MOTIONS IN LIMINE (ECF 88)

Comes now the United States of America, by and through undersigned counsel, and respectfully requests that the Court deny the Defendant's Motions in Limine. As explained more fully below, the Government's evidence is probative and admissible. Where the motions complain about the Government's unwieldy exhibits, the motions are largely moot because the Government has been trying to remove extraneous and unnecessary pages from the exhibits. The remaining exhibits are relevant and otherwise admissible.

**Evidence of Defendant's Employment at Protelecom is Probative of His Knowledge (Defendant's Motion in Limine #1)**

There is no dispute in this case that the Defendant created, owned and operated SandTech and CyCorp Technologies, and failed to supply new, warrantied equipment or services for which he contracted with the government. The only dispute is over the Defendant's intent. The wire fraud charges require an intent to defraud the government. The jury must resolve whether the Defendant bought used or refurbished equipment to supply the government because he had an honest, good faith belief that he was complying with the terms and conditions of the contract or acted with intent to defraud. The jury must determine whether the Defendant had an honest, good faith misunderstanding of the Polycom system or the contract requirements or acted with intent to

1

defraud when he entered into service contracts he couldn't fulfill. Part of the jury's determination of intent is the jury's determination of knowledge. Intent turns on knowledge: the better the Defendant understood the government's contracting requirements, the more likely that his deviations from what was required are the result of bad faith and not honest mistakes. The Defendant's Motion in Limine #1 should be titled, "Motion to Exclude Evidence of the Defendant's Knowledge of the Government Contracting System," and the Motion should be denied.

Protelecom is a large company which throughout the term of Defendant's employment (February 2013 – March 2015, GX 387) was a Polycom partner. Protelecom had both certifications and specializations from Polycom to sell Polycom equipment and provide installation and service repairs to Polycom products including its video teleconferencing system, RealPresence. (GX 390). The Defendant was hired as a "Sales Account Manager" who "will be responsible for Audiovisual, Videoconferencing and Network Systems Sales to Federal Government and Commercial Accounts." (GX 386). Keith Glenn was the owner of Protelecom and a mentor of the Defendant. Kelvin Caple was the Defendant's supervisor. (GX 388). Mr. Glenn died of a heart attack in 2022.

The Defendant's Motion in Limine states that "evidence related to Mr. Sanders' employment at Protelecom has no probative value in establishing whether he committed the offenses in the indictment which . . . did not involve ProTelecom." (ECF 88, at 10). The evidence goes to Defendant's knowledge and experience in not only government contracting but specifically in contracting for video teleconferencing equipment from Polycom. Protelecom required the Defendant to take courses from "Polycom University" which the Defendant migrated to SandTech when he registered his company with Polycom in September 2014. (GX 330A). Moreover, this

2

evidence is not Rule 404(b) evidence of "bad conduct" as the evidence involves gainful, legal employment in Defendant's chosen field. The evidence is relevant and probative. There is no basis to exclude it.

**<u>The Videotape of the Defendant and His Employer, Mr. Glenn, is Admissible.</u>**

The Defendant and Mr. Glenn had a dispute which resulted in a meeting between the two in Mr. Glenn's basement. Mr. Glenn asked Brian Bucksell, a private investigator, to attend and take a video of the meeting. Mr. Bucksell used an application on his phone to film the meeting; the video's metadata shows that it was recorded on September 29, 2014. The entire meeting was not captured on film because Mr. Glenn was anxious to start and did not wait for the camera to be set up, according to Mr. Bucksell. The captured portion is brief, taking up only 463 lines of transcript, and will take little time to introduce and play. The Defendant's consent for the video is not captured on the film; however, the video has internal references to "making a record." Mr. Bucksell asks questions about the ownership of SandTech because "I need to get on record that SandTech LLC is your company." Later in the conversation, the Defendant states, "Can I—can I say something on the record real quick, uh, regarding Mr. Fears . . . ." Both references to being "on the record" or "get[ting] on record" corroborate Mr. Bucksell's recollection that the Defendant consented to the taping.[1] When the video begins, Mr. Glenn is upset with the Defendant, but by the end of the video, the Defendant and Mr. Bucksell are counseling the Defendant. Mr. Glenn emphasized to the Defendant the importance of knowing what he signed when he contracts with the federal government.

GLENN: I'm just curious as to what compelled you to do this. I still - I'm not still clear. And I understand that's the stupidity part and we've all done stupid things in our lives, but I just - it sc- scares me because you have to know...

---

[1] The admissibility of the videotape does not turn on whether the Defendant consented.

| | |
|---|---|
| SANDERS: | Yes, sir. |
| GLENN: | ...what you're doing when you're signing legal documents. |
| SANDERS: | Yes, sir. |
| GLENN: | Legally binding documents, specifically government documents. |
| SANDERS: | Yes, sir. |
| GLENN: | Those are federal documents. You - you signed your name on that line and you have not legally obtained, uh, 'cause the government has no way, they have to trust you (unintelligible) it's like give you all the questions, all the certs and reps and then when you put your name on that document, this is on you. |
| SANDERS: | Yes, sir. |
| GLENN: | It's not on them. This has nothing to do with distributors and nothing else. That contract is between - directly between the federal government and you. |
| SANDERS: | Yes, sir. |

The Defendant did not leave Protelecom until the end of March 2015 so the two patched up their differences, and the Defendant in his two-week notice email, (GX 388), thanked Mr. Glenn, his wife and family:

> Keith Glenn and Family- Thank you for the opportunity to allow myself to become an employee of ProTelecom. My wife and I are forever grateful to you and your family. We cannot thank you enough for everything you've done for us. I admire your passion to give those a chance in life and like you always say "never ask for permission to be successful". Again we are forever grateful.

(GX 388). The purpose of the introduction of this evidence is to demonstrate that the Defendant's mentor specifically warned him about the risks of signing government contracting documents and the need to accept responsibility for the contracts he signs. Because the videotape is so brief, the government can play it at the motions' hearing if the Court believes that would be helpful to the Court's decision. Mr. Bucksell has also reviewed the transcript of the recording and provided some supplementation to the transcription. A copy of the transcript is appended here as Ex. 1.

4

**The Defendant is Not an Air Force Veteran and Evidence of His Lack of Status is Admissible (Defendant's Motion in Limine #2).**

The Defendant, throughout his operation of SandTech and CyCorp, attempted to trade on his purported status as an "Air Force Veteran". When the Defendant registered SandTech with Polycom, he described his company as "a Veteran Owned Small Business that specializes in the design, delivery, and maintenance of audiovisual video conferencing, and network systems." (GX 330A). In the Defendant's representations and certifications on federal contracts, he certified to the federal government that he "is a small business concern" (a truthful assertion) and that "the offeror represents as part of its offer that it is a veteran-owned small business concern". (*E.g.,* GX 22). Not only are the "veteran" claims made in the Defendant's contracting documents, but he also features his purported status in his email signature block:

```
Cory Sanders MBA.ISM
USAF Veteran
Chief Executive Officer
1629 K ST NW Suite 300
Washington DC, 20006
Office: (844) 513-8095
Cell: (202) 697-2866
Email: Corys@cycorptechnologies.com
www.cycorptechnologies.com
```

(*See, e.g.*, GX 152, 217, 458, among others).

Contrary to the defense assertions that proof of the Defendant's status (or lack of status) as an Air Force veteran will become a mini-trial, the proof consists largely of proof of the absence of records. The Air Force is adamant that Cory C. Sanders did not serve in the Air Force. (GX 370). Being in the Air Force **Reserve** is not the same thing as being in the Air Force. The Defendant was in the Air Force Reserve because he was in the ROTC program while he was a student at

Florida A&M University.[2] The Defendant's ROTC records show that on December 14, 2001, he enlisted in the Air Force **Reserves** when he entered the ROTC program. (Ex. 2 filed under seal). He was disenrolled from the ROTC program on July 5, 2005, (Ex. 3 filed under seal, p.1), and thereafter was honorably discharged from the Air Force **Reserves**. (Ex. 3, p. 2[3]).

The touchstone for veteran status in government contracting is defined in the contract documents "as a small business owned by one or more veterans (as defined at 38 U.S.C. Section 101(2))." (GX 22). 38 U.S.C. 101 provides the definition of veteran:

**(2)** The term "veteran" means a person who served in the active military, naval, air, or space service, and who was discharged or released therefrom under conditions other than dishonorable.

And "active duty" is defined as well:

**(21)** The term "active duty" means—
**(A)** full-time duty in the Armed Forces, other than active duty for training.

The Defendant will likely suggest that these definitions are confusing, and he somehow thought he was a "veteran" because he was honorably discharged from the Air Force **Reserve**. However, the Defendant grew up in a military family—his father was career Air Force—and was in a position to appreciate the difference between active duty military life and the life of an ROTC cadet on a college campus. The Defendant's permanent disenrollment from the ROTC program, a training program for future officers, ended his dream of graduating and entering onto active duty with the Air Force.

The government does not seek to introduce this evidence because long ago when the Defendant was a college student he made a poor decision. Rather, throughout the Defendant's

---

[2] The Florida A&M ROTC participants trained with the ROTC program at Florida State University. Both universities are in Tallahassee, FL.
[3] The honorable discharge from the Air Force Reserve states, "DD FORM 256AF WILL BE FURNISHED." The DD Form 256AF is the exhibit used by the Defendant in his motion in limine, but even that form shows a discharge from the Air Force **Reserves.**

execution of the scheme to defraud he held himself out as an Air Force veteran and represented to contracting officials that his companies were "veteran-owned small businesses". The Defendant had many military customers and his prominent display of his purported status of "Air Force Veteran" in every email could be construed by the jury as an attempt to ingratiate himself with military customers. The poor decision at issue in this case is not the Defendant's conduct 20 years ago in the ROTC program, but his continued attempts throughout the operation of SandTech and CyCorp Technologies to trade on a veteran status he knew was not his to claim.

**Defendant's Motion to Restrict Proof to Contracts Named in the Wire Fraud Counts Overlooks the Contracts Described in the Manner and Means Paragraphs (Defendant's Motion in Limine #3).**

The Defendant has moved to restrict the government's proof to only those contracts specifically charged in a wire fraud count. This motion overlooks the contracts specifically alleged in the manner and means paragraphs describing the scheme to defraud. This motion is another effort to exclude the Department of Army contract which the defense previously attempted to re-write out of the indictment. (*See* ECF 68). The Scheme to Defraud is described in Paragraphs 17 – 31. Paragraph 23 is especially relevant here:

> 23. It was further part of the scheme and artifice to defraud that SANDERS formed CYCORP TECHNOLOGIES and later dissolved SANDTECH after SANDERS caused SANDTECH to fail to perform contracts with the United States Army and Department of Labor ("DOL"), which were subsequently terminated for cause.

The Army Contract No. 15-P-0017 was awarded to SandTech on February 19, 2015, and was to deliver maintenance renewal support for Bluecoat web filter at Ft. Eustis, Virginia. Ft. Eustis administered a program to provide computer labs to service members who might not have personal computers and housed the computer servers for that program. Bluecoat's service was to keep computer users who inadvertently clicked on links which directed them to fraudulent or dangerous

7

websites from visiting those sites. The Defendant billed and was paid $27,910.54, but he provided nothing to Ft. Eustis. The contracting officer sent SandTech a cure notice in April 2015, and a demand for repayment in May 2015. The Defendant did not respond, and the contracting officer terminated the contract and referred the contract to the Defense Finance and Accounting System ("DFAS") for collection.

The Bureau of Labor Statistics ("BLS") of the Department of Labor had three contracts for service of Polycom equipment which all were awarded to SandTech in quick succession in August – September 2015 (contracts 15-0130, 15-0109, and 15-0199). The Defendant again failed to perform, and the contracts were all terminated for cause. BLS officials were so frustrated that they referred SandTech for possible debarment. The evidence from these four contracts is not only alleged in Paragraph 23, but it is especially significant because the jury must determine the Defendant's intent in operating SandTech and CyCorp Technologies. From the government's point of view, the Defendant's criminal intent can be inferred from his failure to perform the initial contracts he was awarded and that fact that he never stops. The government should not be prevented from offering evidence to prove the manner and means paragraphs of the indictment.

The Defendant has also moved (Motion in Limine #9) to exclude the BLS referral memo for SandTech and CyCorp's disbarment; the author of the memo will testify so there cannot be a hearsay objection, and the Polycom officials with whom he is emailing will testify as well. The government concurs that the email traffic between BLS and the investigating agent regarding the "lost" Exhibit 2 should be redacted. (*See also infra* at pg. 14).

The Defendant also complains about evidence from Navy Contract No. 16-P-0121, but that conduct is specifically alleged in Paragraph 26 of the Manner and Means paragraphs. Because SandTech had failed to perform 4 contracts which were terminated for cause, the Defendant had

8

disclosure obligations on the certification and representation clauses of SandTech contracts. In addition, DFAS was collecting from the Ft. Eustis Bluecoat contract termination. The Defendant incorporated CyCorp Technologies on March 21, 2016. To the Navy, the Defendant represented that CyCorp Technologies was just a name change for SandTech, so payments for SandTech would be made to CyCorp. In fact, the Defendant had cancelled SandTech with the Maryland Department of Assessments and Taxation on June 7, 2016 – a cancellation which defeated the efforts of DFAS to collect the full repayment for the Army contract P-0017. Again, the government should not be prevented from offering evidence to prove the manner and means paragraphs of the indictment.

The Defendant also complains about evidence from Navy contract 16-P-0511. This evidence is directly related to Counts 11 and 12. Because of performance issues on 16-P-0511 (equipment delivered was marked as coming from China), the Navy contracting official was especially watchful of CyCorp's performance on Contract No. 18-0670. The Navy recipients were assured by the Defendant that he was an authorized partner with Cisco and "you can check the partner portal", when the Defendant was purchasing used equipment outside of Cisco partner channels. One of the government witnesses for the Count 12 contract is the same witness as for contract no. 16-P-0511 and little extra trial time will be consumed by this evidence.

Similarly, the Customs and Border Patrol placed an order for Polycom equipment which the Defendant bid on through FedBid, despite the fact that SandTech had lost its agreement with Polycom, and CyCorp had never had a partner relationship with Polycom. The Defendant "fulfilled the contract" (contract no. ending in 00803) by having an individual in Great Neck, NY ship used equipment to Spokane, Washington. This evidence will require only one witness to present and is especially important to show that the Defendant knew, or willfully blinded himself

to the fact, that purchasing outside the Polycom distributor supply chain resulted in the purchase of used/refurbished/nonconforming equipment to the Government.

Finally, the Bureau of Indian Affairs contract occurs late in the scheme to defraud. This evidence is a continuation of the scheme the Defendant has been operating all along, but again is necessary to demonstrate that the Defendant is not making honest mistakes but deliberately choosing, over an extended period of time, to operate his company in a fraudulent manner. By the time the contracting officer asks the Defendant for proof that he is a Cisco partner, he takes an old plaque and photocopies it and emails it to her. This evidence will require the testimony of a single witness.

**Defendant's Objections to the Government's Evidence Are Largely Moot (Defendant's Motions in Limine 4, 5, 6, 7, 8, 10, 11, and 15).**

After an opportunity to review and edit the Government's Exhibit List, the Government has removed exhibits to which Defendant had objected, namely:

| Exhibit No. | Description | Defendant's Motion in Limine No. |
|---|---|---|
| 29 | Excel spreadsheet obtained via subpoena from Amazon showing purchase of Cisco equipment (rows 29-30) | MIL #4 |
| 112 | Cisco search results for Contract No. 15-0096 | MIL #4 |
| 205 | 2018.10.25 – 11.2 Emails with command about return of equipment to Sanders | MIL #4 |
| 216 | 2018.10.5-16 Emails regarding contract cancellation, SN, and Cisco partner | MIL #4 |
| 297 | Report 2019.07.10 regarding Serial No. Analysis for Contracts | MIL #4, 8 |
| 302 | Email from T. Casto, Spyder and Goldengate are not authorized resellers | MIL #5 |
| 303 | Email from T. Casto, Excess Equipment 2015-2018 | MIL #5 |
| 304 | 2016-2018 Cisco equipment check | MIL #5 |

| 305 | Serial Number check sold in China, unauthorized | MIL #5 |
| --- | --- | --- |
| 306 | Tanberg equipment check, Contract No. 15-0096 | MIL #5, 8 |
| 307 | Excel spreadsheet serial number submissions to Cisco May 2019 – Tim Casto | MIL #11 |
| 311 | 2018.09.15 serial number check Cisco | MIL #5 |
| 313 | Counterfeit unit 2018.10.11 | MIL #5 |
| 314 | 2019.09.25 serial number check excess Cisco | MIL #5 |
| 315 | 2020.06.30 false certificate Sanders sent to Jodi Zachary | MIL #5 |
| 317 | Navy equipment check Cisco | MIL #5 |
| 318 | Case Details Report | MIL #8 |
| 339-364B | Text Messages | MIL #6 |
| Summary Timeline | Prepared by Special Agent Troy Reyes | MIL #7 |

The Government has prepared a summary exhibit of equipment serial numbers associated with Contract No. 15-0096 (Counts 1, 4, 5, 14), Contract No. 16-0121 (Para. 26), Contract No. 15-0180 (Count 1, 2, 3, 13), Contract No. 18-0670 (Count 12), and Contract No. 16-0511 (precursor to Contract No. 18-0670). Government Exhibit Nos. 29, 299, and others listed on the Government's preliminary exhibit list form the "back up" for the summary exhibit, about which a federal law enforcement agent, agency representatives who collected the serial numbers, and a representative from Cisco will testify. The summary exhibit attempts to streamline the evidence involving the serial numbers for the equipment supplied by the Defendant to the United States in relation to the charged counts, the source for the equipment, and whether the equipment was new

and under manufacturer's warranty, from an authorized Cisco distributor, precisely what F.R.E. 1006 is designed to accomplish.

The exhibit and back up documents will be supplied to defense counsel by February 10 at 9:00 am along with the Government's updated Exhibit List in accordance with ECF No. 99.

### A. Government Exhibit Nos. 161 and 424 are relevant and otherwise admissible.

Next, Defendant claims that Government Exhibit Nos. 161 and 424 constitute "overbroad and cumulative evidence." (ECF No. 88 at 22). This argument is without merit. Government Exhibit No. 161 is an 8-page e-mail chain relating to Contract No. 17-0017, which is the pertinent contract for Count 7 of the Second Superseding Indictment. The e-mail concerns a purported Cisco "Gold Certified Partner" certificate sent by the Defendant to Donna Owens, Purchasing Agent with the Naval Air Warfare Center, in an effort to secure a $60,000 contract to supply Cisco equipment for use at the Patuxent River Naval Air Station. (*See* Government Exhibit No. 161, ECF No. 88-7)). When Ms. Owens received it from the Defendant, she e-mailed the purported certificate to her contact at Cisco. An investigator with Cisco's Brand Protection team, Timothy Casto, verified its lack of authenticity, i.e. that the Defendant had created a phony Cisco certificate and supplied it to Owens. (*Id.*). Both Owens and Casto will testify at the trial. The exhibit is probative of the Defendant's attempt to pass off a falsified certificate (*see* F.R.E. 401) in an effort to secure a government contract, any hearsay objection should be overcome because both Owens and Casto are expected to testify, and Casto also has knowledge of the efforts of his teammates, which he directed to investigate the validity of the certificate. In addition, Government Exhibit No. 161 constitutes a business record pursuant to F.R.E. 803(6) and is supported by a certification by Casto which was also provided to the Defendant.

Similarly, Government Exhibit No. 424 has been revised to an 8-page e-mail chain relating to Contract No. 16-0511, a precursor to Contract No. 18-0670, which is the pertinent contract for Count 12 of the Second Superseding Indictment. (See ECF No. 88-14 at pgs. 1-8). The e-mail concerns network switches that the Defendant supplied (purportedly from Cisco) to the Naval Medicine Operational Training Center ("NMOTC"). The switches arrived in packaging stamped "made in China" and were not compliant with the scope of work for the contract, as explained by the Director for Information Technology Janet Reeves. Reeves is expected to testify at the trial. The exhibit is probative pursuant to F.R.E. 401 and 404(b)(2) of the Defendant's intent, plan, knowledge and absence of mistake in his scheme to pass off nonconforming equipment to the federal government. The e-mail also constitutes a business record of NMOTC which was made and kept in the course of the regularly conducted business of the agency. (F.R.E. 803(6)).

B. **Government Exhibits 290, 308, 470, and 471 have been edited to remove agent memoranda and broken into smaller parts.**

Government Exhibits 308, 470, and 471 have been edited and any law enforcement memoranda have been excised from the exhibit. In addition, Exhibits 470 and 471 have been broken into subparts 470A through 470E and 471A through 471C for ease of use and to address the Defendant's concerns regarding the length of certain exhibits.

Government Exhibit No. 290 was the subpoena response from Cisco including a certification pursuant to F.R.E. 803(6) and 902(11). The 66-page exhibit has been broken into subparts 290A through 290M for ease of use and to address the Defendant's concern regarding the length of the exhibit.

### C. Government Exhibit No. 194 is a business record and the photographs contained in it can be authenticated by witness Linda Estep.

Defendant objects to Government Exhibit No. 194, a 3-page exhibit containing an e-mail from Linda Estep, Contracting Officer's Representative with the Department of Labor. (ECF No. 88-29). Estep oversaw the procurement of 24x7 technical support, software upgrades for Polycom equipment, video test facilities, and hardware replacement for defective parts for video teleconference equipment at each Job Corps facility in the United States, Alaska, Hawaii, and Puerto Rico. The contract was awarded to the Defendant's business, CyCorp Technologies, in the amount of $68,000. During the course of the contract performance, Estep received an e-mail in connection with replacement equipment received from CyCorp at one of the Job Corps facilities which arrived "in a Home Depot box with eBay tape on the bottom." (Government Exhibit 194, attached herein). The body of the e-mail describes the photographs attached, ("Attached are images of the box and label."), such that the photographs can be authenticated by Estep pursuant to F.R.E. 901(b)(1) and also based upon the circumstances of the e-mail and attachments, pursuant to F.R.E. 901(b)(4). The e-mail also constitutes a business record of Job Corps which was made and kept in the course of the regularly conducted business of the agency. (F.R.E. 803(6)).

Accordingly, the Government respectfully requests that the Court deny Defendant's Motions in Limine Nos. 4, 5, 6, 7, 8, 10, 11, and 15.

### The Government Opposes Defendant's Motions in Limine No. #9 and #12

Defendant seeks to exclude Government Exhibit No. 70, the recommendation for debarment of Defendant and his companies, SandTech and CyCorp. The recommendation describes, in detail, the Defendant's nonperformance over the course of three separate contracts resulting in terminations of the contracts for cause by the agency. Michael Schuman, Branch Chief with the Division of Administrative Services at the Department of Labor, in the Bureau of Labor

Statistics, prepared the recommendation. Schumann is expected to testify at the trial, along with contracting specialist Elliott Jones and contracting officer Gary Fontaine, both of whom were involved with the contracts in issue.

Although Defendant claims that Government Exhibit No. 70 concerns contracts unrelated to the charges, this assertion is in error. Paragraph 23 of the Second Superseding Indictment alleges that the Defendant formed CyCorp and dissolved SandTech after he "caused SandTech to fail to perform contracts with the United States Army and ***Department of Labor, which were subsequently terminated for cause***." (emphasis added). The three Department of Labor contracts, No. 15-0130, No. 15-0199, and No. 15-0109 form the basis for the debarment recommendation and are referenced expressly in paragraph 23, such that the evidence is relevant and probative of the Defendant's business plan to defraud the government. (F.R.E. 401).

Defendant is also mistaken that the exhibit constitutes inadmissible hearsay. Rather, the recommendation for debarment falls squarely within F.R.E. 803(6) as a record of a regularly conducted business activity. The record was made at or near the time of the Defendant's nonperformance by Schumann and Jones, making the record was part of the witness' regular procurement activities, and was a regular practice for Schumann as a Branch Chief for Acquisition Management. The materials appended to the debarment recommendation are also business records, made and kept in the ordinary course of business for the Bureau of Labor Statistics.

The Court should deny the Defendant's motion with respect to Government Exhibit No. 335 for the same reason. Defendant asserts, without any support, that the "comments" section of a Polycom record constitutes inadmissible hearsay. The record notes that the Defendant falsified a Polycom program certification document and provided the document to the government. (*See* ECF No. 88-27). Defendant is also mistaken that a Polycom employee could not have personal

knowledge of "whether CyCorp was properly registered with the government." (ECF No. 88 at 41). The federal registration reflected in the log pertains to a federal specialization available from Polycom, which Defendant had not obtained. The Government anticipates testimony from witnesses from Polycom regarding the creation of the log in issue, which was filled in at or near the time of the events, and maintained in the ordinary course of business for Polycom. This is underscored by the comments themselves, which are designed to serve as an alert should Defendant attempt to re-register with Polycom. The Government should have an opportunity to lay a foundation for the admission of the Polycom exhibit, which contains probative evidence of the Defendant's attempts to falsify documents, an integral part of his scheme to defraud the government.

Therefore, the Government respectfully requests that the Court deny the Defendant's motions in limine nos. 9 and 12.

**Government's Response to Defendant's Motions in Limine #16 and 18**

First, Defendant seeks to exclude evidence concerning the activities of companies not associated with Defendant. The Court should give this argument short shrift. The Government must have an opportunity to present evidence of bids submitted by companies other than CyCorp for the contracts in issue to explain the contracting process to the jury. Here, agencies were required to obtain bids from several small businesses, based upon the amount of the contract, to provide IT equipment or maintenance services, or both. The agencies were required to award the contract to the lowest technically acceptable bidder, to achieve the best value for the government. Evidence relating to bidders other than CyCorp is also relevant to the manner in which the government was victimized by the Defendant. The agencies had many legitimate bidders who

were passed over time and again in favor of CyCorp, by virtue of the Defendant's scheme to beat the competition by selling used equipment or in some instances providing no services at all.

Next, Defendant seeks to exclude testimony "regarding why government agencies contracted for new equipment," information inherent to the charges involving Contract No. 15-0109, Contract No. 15-0199, Contract No. 15-0180, Contract No. 15-0096, Contract No. 17-0017, and Contract No. 18-0670. The contracts required that Defendant provide "New Equipment ONLY; NO remanufactured or 'gray market' items. All items must be covered by the manufacturer's warranty." The Government witnesses should have an opportunity to explain to the jury why it mattered for the Defendant to supply new equipment, under manufacturer's warranty, and how used or refurbished equipment, or equipment that otherwise failed to comply with the scope of work, affected the mission. Such testimony is relevant to the manner in which the government was harmed and can be elicited efficiently with a question or two from the customer witnesses. The Defendant's arguments to the contrary are unsupported.

Thus, the evidence is relevant under F.R.E. 401, integral to the Defendant's contracting scheme, and should be admitted.

The Government respectfully requests that the Court deny Defendant's Motions in Limine because the motions are largely moot, and alternatively, because the Government's evidence is otherwise relevant and admissible.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
Joyce K. McDonald
Evelyn L. Cusson
Assistant United States Attorneys
4th Floor
36 S. Charles Street
Baltimore, MD 21201
410-209-4899