## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. JKB-20-168** |
| **CORY SANDERS,** | |
| **Defendant.** | |

### MEMORANDUM

The United States of America (the "Government") and Defendant Cory Collin Fitzgerald Sanders have proposed competing jury instructions in the above-captioned case. (Gov't Proposed Instructions, ECF No. 76; Def. Obj. and Proposed Instructions, ECF No. 80.) The parties largely dispute the instructions relating to the aggravated identity theft charge in Count 16 of the Second Superseding Indictment. (Second Superseding Indictment, ECF No. 57 at 12.) Given the uncertain legal terrain surrounding the aggravated identity theft statute, 18 U.S.C. § 1028A, the Court finds it appropriate to explain in this Memorandum the reasoning underpinning its intended jury instructions on Count 16. The Court's tentative instructions as to the aggravated identity theft charge are attached hereto as Exhibit A.[1]

---

[1] The Court reserves the right to incorporate further edits, substantive or otherwise, before finalizing the jury instructions. Federal Rule of Criminal Procedure 30 gives counsel the right to object to any portion of the instructions before the jury retires to deliberate. The Court will, of course, follow that procedure here. The Court notes that minor objections not addressed herein persist with respect to the proposed instructions, and those objections will be addressed in due course, before the jury retires to deliberate. The Court will conduct a normal instructions conference near the end of the trial, and rulings indicated herein will only be finalized during that conference, after counsel have been heard. The Court's final rulings on the issues addressed herein will likely be as predicted here.

## I.    Background

Broadly speaking, the Government charged Mr. Sanders with executing a scheme to defraud the United States by making false representations in contracting with federal agencies. (Second Superseding Indictment at 4–9.) Certain contracts, for example, required Mr. Sanders to provide federal agencies with new telecommunications equipment covered under warranty. Allegedly, Mr. Sanders provided neither new nor warrantied equipment. (*Id.* at 5.) The Government contends Mr. Sanders falsely represented the delivery, source, warranty, and quality of his equipment. (*Id.* at 6.) The Second Superseding Indictment charges Mr. Sanders with wire fraud in violation of 18 U.S.C. § 1343 (Counts 1-12), making false claims to the United States in violation of 18 U.S.C. § 287 (Counts 13-14), submitting a false document (false statement) to the United States in violation of 18 U.S.C. § 1001(a)(3) (Count 15), and committing aggravated identity theft in violation of 18 U.S.C. § 1028A (Count 16).

Count 16 turns on the Government's allegation that Mr. Sanders falsely represented that he was an authorized partner of Polycom—a company that provided electronic communications hardware and software for various government contracts. (Second Superseding Indictment at 12.) As part of this fraud, Mr. Sanders allegedly submitted a forged document certifying his relationship with Polycom. (*Id.*) Specifically, the Polycom certification included the signature block of Barb Huelskamp ("B.H."), Polycom's Vice President of Americas Channel Sales. (Polycom Certification Letter, ECF No. 37-1.)

In his prior motion to dismiss Count 16, Mr. Sanders argued, and the Government did not dispute, that this signature block is merely a stylization and that "Barbara Huelskamp did not generate, sign, or review Polycom certificates[,]" which were instead "generate[d] through Polycom's online tool." (Mot. Dismiss, ECF No. 37 at 2.) Because Mr. Sanders did not

"impersonate or pass himself off as" Huelskamp, Mr. Sanders argued his inclusion of Huelskamp's

signature did not constitute a "use" of her identity. *(Id.* at 8.) In support of his theory, Mr. Sanders

noted that the First and Ninth Circuits have endorsed a limited reading of the word "use" in

§ 1028A. *See United States v. Hong*, 938 F.3d 1040, 1050-51 (9th Cir. 2019); *United States v.*

*Berroa*, 856 F.3d 141, 156 (1st Cir. 2017) ("[W]e read the term 'use' to require that the defendant

attempt to pass him or herself off as another person or purport to take some other action on another

person's behalf.").

In considering Mr. Sanders's motion to dismiss Count 16, the Court found that, although

the First and Ninth Circuits "provide[d] a compelling reconciliation of the text, structure, and

legislative history of § 1028A," a limited interpretation of "use" was "implicitly foreclosed by the

Fourth Circuit's decision in *United States v. Abdelshafi*, 592 F.3d 602 (4th Cir. 2010)." (Mem.,

ECF No. 46.) There, the Fourth Circuit upheld convictions under § 1028A of a provider of medical

transportation services who submitted claim forms, "which included patients' identifying

information," with inflated mileage amounts and "for trips that did not, in fact, occur." *Abdelshafi*,

592 F.3d at 605–06. This Court read the Fourth Circuit's holding in *Abdelshafi* as implicitly

rejecting the narrower interpretation of "uses" because the defendant in that case did not "pass him

or herself off as another person or purport to take some other action on another person's behalf."

*Hong*, 938 F.3d at 1050-51. The Court therefore tentatively adopted a plain-meaning (and broader)

interpretation of the word "use," which generally means "'to put into action or service,' 'to avail

oneself of,' or to 'employ.'" *See United States v. Wedd*, 993 F.3d 104, 122 (2d Cir. 2021).

While this interpretation of "use" is broad, the Court recognized the term still had

"meaningful limitations" under § 1028A. (Mem. at 6.) Most importantly, it noted that "use" is

not "broad enough to reach the mere act of saying that the persons did something they in fact did

3

not do." (*Id.* (quoting *Wedd*, 993 F.3d at 124 and *United States v. Miller*, 734 F.3d 530, 542 (6th Cir. 2013)) (quotation marks omitted).)  The need to set "meaningful limitations" on the word "use" is paramount in cases like the present, where "the only 'means of identification' used is a name." *See Miller*, 734 F.3d at 541.  Further complicating the matter is the notion that falsely claiming authority to act on behalf of a *corporation* does not constitute aggravated identity theft within this Circuit. (*See* Mem. at 7–8 (citing *United States v. Hilton*, 701 F.3d 959, 969 (4th Cir. 2012)).)

With these "intensely fact-specific" considerations in mind, the Court denied Mr. Sanders's motion to dismiss Count 16 of the indictment. (*Id.* at 8.)  In a motion to dismiss posture, the Court was not permitted to look to the facts proffered by Mr. Sanders—*i.e.*, that B.H.'s signature was autogenerated, that B.H. did not review Polycom certifications, or that B.H.'s signature was a stylization rather than a legally necessary component of those certifications. (*Id.* at 9.)  So, despite the Court's "grave doubts" about the applicability of the statute in this context, the Court denied the motion to dismiss without prejudice. (*Id.*)

## II.   *Analysis*

### (a) *"Use" and "During and in Relation To"*

The Court's jury instructions should draw "practical boundaries" on the otherwise-broad meaning of the word "use" in § 1028A. *See Miller*, 734 F.3d at 541.  These restrictions emanate from § 1028's use of the phrase "during and in relation to" to dictate when a defendant's "use" of a means of identification becomes prohibited (and amounts to its own offense) while the defendant is in the process of committing <u>another</u> (qualifying) offense.  Specifically, the Court interprets the phrase "during and in relation to" to mean that the defendant's use of another

4

person's "means of identification" cannot be merely *incidental to* the commission of the other offense.

Section 1028A does not criminalize every unauthorized use of a means of identification; rather, it prohibits such use "during and in relation to" the statute's enumerated felonies. *See* 18 U.S.C. § 1028A(a)(1). The phrase "during and in relation to" means that the defendant's "use" of a means of identification must have a nexus to the predicate offense. But, *how much* of a nexus? While the Fourth Circuit has not explicitly defined "during or in relation to" as used in § 1028A, it has interpreted the phrase in other contexts to mean "facilitat[ing]" the predicate offense. *See United States v. Person*, 153 F. App'x 170, 172 (4th Cir. 2005) (citing *Smith v. United States*, 508 U.S. 223, 238 (1993)).

That interpretation makes grammatical and practical sense. The phrase "during and in relation to" modifies the word "use," so the phrase limits the otherwise expansive reach of the verb "use." *See Muscarello v. United States*, 524 U.S. 125, 138 (1998) (explaining that the phrase "in relation to" provides a "limit" on the breadth of the verb "carry"). Applying this principle to § 1028A, the defendant's "use" of a means of identification must *facilitate* the underlying offense—a mere incidental association between the two is not enough. In other words, the means of identification "must have some purpose or effect with respect to the . . . [predicate] crime; its presence or involvement cannot be the result of accident or coincidence." *See Smith*, 508 U.S. at 238.

Although the Fourth Circuit's decision in *Abdelshafi* implicitly foreclosed the Court from adopting the First and Ninth Circuit's narrow reading of "use," (Mem. at 5, citing *Abdelshafi*, 592 F.3d at 606), the Court's interpretation and application of the "during and in relation to" limit faces no such barrier. In *Abdelshafi*, the defendant provided medical transportation services to Medicaid

patients and was convicted under § 1028A because he "not only inflated mileage amounts" for those patients' trips, "but also submitted claim forms for trips that did not, in fact, occur." *Id.* at 606. By falsely claiming that he provided trips for certain Medicaid patients, the defendant *needed* to use the names of those individuals to facilitate the underlying offense. That is, the defendant could not have submitted a claim for those extra trips *without* naming the patients themselves. So, the defendant's use of those people's "means of identification" was sufficiently consequential to his fraudulent scheme to meet the nexus requirement implied from the phrase "during and in relation to."

This Court's interpretation of "during and in relation to" is not novel. Even jurisdictions rejecting narrow interpretations of the word "use" have fashioned a causation requirement from the phrase "during and in relation to." *See Wedd*, 993 F.3d at 123 (citing *United States v. Michael*, 882 F.3d 624, 628 (6th Cir. 2018) and *United States v. Munksgard*, 913 F.3d 1327, 1334-35 (11th Cir. 2019)) (explaining "the language 'during and in relation to' connotes causation" which asks "whether the defendant used the means of identification to further or facilitate . . . the fraud").

Two cases from the Sixth Circuit provide illustrations on both sides of the spectrum. In *United States v. Medlock*, 792 F.3d 700, 706 (6th Cir. 2015), the defendants, who ran a non-emergency ambulance company, did not use other people's names "during or in relation to" their fraudulent scheme because they simply mischaracterized the services they provided to their patients. *Id.* at 707 ("[The defendants] misrepresented *how* and *why* the beneficiaries were transported, but they did not use those beneficiaries' identities to do so.") (emphasis in original). On the other hand, the pharmacist in *Michael* used another person's name "in relation to" the predicate offense of healthcare fraud by including that person's name on a reimbursement form for a drug that person never requested. *See* 882 F.3d at 625. By misrepresenting *who* received the

6

drug, the pharmacist's use of the other person's name was integral to the underlying scheme to defraud. *Id.* at 629.

Without reading "during and in relation to" as a causation requirement, the Government could rely on the otherwise vague and unlimited definition of "use" to charge aggravated identity theft in any case where the accused merely references another person's name while committing an enumerated felony. Any mail or wire fraud, for example, could involve the "use" of another person's identity if the perpetrator simply writes a name on an address label. The Court need not accept such an absurd result. If any ambiguity surrounds the terms "use" or "during and in relation to," the rule of lenity requires the Court to resolve such uncertainty in favor of the defendant. *See United States v. Bass*, 404 U.S. 336, 347 (1971). Three Courts of Appeals have applied the rule of lenity to this very statute. *See United States v. Berroa*, 856 F.3d 141, 157 n.8 (1st Cir. 2017); *United States v. Miller*, 734 F.3d 530, 542 (6th Cir. 2013); *United States v. Spears*, 729 F.3d 753, 757–58 (7th Cir. 2013) (en banc). If the rule of lenity stands for anything, surely it prevents the Government from wielding § 1028A against any defendant who incidentally uses another's name while committing a predicate offense.

### (b) "Of Another"

This case presents a unique twist in that Mr. Sanders's "use" of Huelskamp's name and signature may be incidental to his submission of the fake Polycom letter because of her status as a corporate representative of Polycom. The Court described this vexing issue in its prior Memorandum:

> [I]t is unclear whether the inclusion of the individual's name constitutes a "use" of that name or whether it instead is "the mere act of saying that the persons did something they in fact did not do"—i.e., that a person affirmed a particular corporate action when they in fact did not. *Wedd*, 993 F.3d at 124 (quoting *Miller*, 734 F.3d at 542) (emphasis omitted). Although there are limited data points, even those few cases suggest that the distinction between the former and the latter is intensely fact-specific. On one set of facts, an

7

individual purportedly reviewing, approving, and signing a contract may sufficiently center the focus on that individual . . . . On different facts, the fraudulent inclusion of partners' names to informally ratify a corporate decision may seem more like a defendant "act[ing] on behalf of *an entity* rather than on behalf of *individuals*"—an act that falls outside the scope of § 1028A. *Michael*, 882 F.3d at 628 (emphases in original) (citing *Miller*, 734 F.3d at 541 n.5).

(Mem. at 8.)  The Court will reconcile this problem by instructing the jury to determine whether

the defendant's use of Huelskamp's name—not merely Polycom's name—facilitated the charged

offense.  In its instructions, the Court will explain that a defendant's use of a *corporation's* name

or other means of identification does not constitute aggravated identity theft.  *See United States v.*

*Hilton*, 701 F.3d 959, 969 (4th Cir. 2012).  When a defendant charged under § 1028A uses both a

corporation's name and an individual's name in the same unauthorized act, the jury must find that

the individual's name, specifically, was used to further or facilitate the predicate offense

underlying the aggravated identity theft charge, and that the use of the individual's name or identity

was not merely incidental in the execution of the related offense.

### (c) *"Or Transferred or Possessed"*

Mr. Sanders objects to the inclusion of the phrase "or transferred or possessed" in the

instructions.  (Def. Obj. at 8.)  Mr. Sanders argues the indictment narrowly charges him with

"using" a means of identification of another person—not transferring or possessing another

person's means of identification.  (*See* Second Superseding Indictment at 12 ("to wit, the defendant

*used* the name and signature of B.H., a Polycom official, in a forged letter of certification . . ."

(emphasis added)).

The Court will retain the disjunctive phrase "or transferred" in the relevant jury instructions

and delete the phrase "or possessed."  As an initial matter, Mr. Sanders incorrectly asserts the

indictment does not charge him with "transferring" a means of identification.  Count Sixteen of

the Second Superseding Indictment states:

8

[T]he defendant CORY COLLIN FITZGERALD SANDERS, did knowingly *transfer, possess, and use.* without lawful authority, a means of identification of another person during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud as charged in Count Ten of this Superseding Indictment, and false document as charged in Count Fifteen of this Superseding Indictment, knowing that the means of identification belonged to another person; to wit, the defendant *used* the name and signature of B.H. a Polycom official, in a forged letter of certification dated January 8. 2016. which stated that CYCORP TECHNOLOGIES met requirements for certification and specialization with Polycom and was therefore qualified to sell particular Polycom products and services, and *transferred* the forged letter of certification to a contracting official of the U.S. Department of Labor.

(*See* Second Superseding Indictment at 12; emphasis added.) Accordingly, the Court will retain the phrase "or transferred" in the jury instructions.

The Court will delete "or possessed" from the relevant jury instructions for two reasons. Although the Second Superseding Indictment *mentions* the word "possess," the reference occurs only in the boilerplate recitation of the statutory language. The Government's factual description of the charge does not explicitly allege Mr. Sanders "possessed" a means of identification. By including the word "possession" in the jury instructions, the Court runs the risk of constructively amending the operative indictment. *See United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999) (holding the district court was "not allowed through its jury instructions, to broaden the bases of conviction" to include an element not specified in the indictment).[2] The Court recognizes this as a close call, but the better approach is to leave the word out.

### (d) "Means of Identification"

Mr. Sanders requests the Court include the entirety of the language from the Sand & Siffert model instruction defining the phrase "means of identifications." Specifically, Mr. Sanders requests the Court include the following language:

---

[2] A "constructive amendment" is occasionally referred to as a "fatal variance."

The term "means of identification" means any name or number that
may be used, alone or in conjunction with any other information, to
identify a specific individual, *including any name, Social Security
number, date of birth, official state or government issued driver's
license or identification number, alien registration number,
government passport number, employer or taxpayer identification
number, or unique biometric data, such as fingerprint, voice print,
retina or iris image, or other unique physical representation, or a
unique electronic identification number, address, or routing code, or
electronic serial number, or any other number or signal that identifies
a specific telecommunications instrument or account, or a specific
communication transmitted from a telecommunications instrument.*

(Def. Obj. at 4-5; Mr. Sanders's additional requested language in italics.) The Court will deny Mr.

Sanders's proposal without prejudice. Although Mr. Sanders's requested language comes directly

from the relevant statutory language; *see* 18 U.S.C. § 1028(d), it is unclear, at this point, how any

of the additional examples are relevant to the charge against Mr. Sanders. If it becomes apparent

that Mr. Sanders is alleged to have used any means of identification beyond Huelskamp's name,

Mr. Sanders may renew his request.

### (e) *"Without Lawful Authority"*

The Government proposes the Court instruct the jury that "to act without lawful authority"

means "to act without the consent or knowledge of the individual whose means of identification

were used." (Gov't Proposed Instructions at 68.)

Mr. Sanders objects to the phrase "without the consent or knowledge" in such an

instruction. (Def. Obj. at 6.) That phrasing, according to Mr. Sanders, does not comport with the

facts here because Huelskamp did not generate, sign, or review Polycom certifications.

Huelskamp's name and digital signature were merely featured in the template that Polycom used

to create certifications via its online tool, according to Mr. Sanders. Because any individual using

Polycom's online tool acted without Huelskamp's knowledge or consent, Mr. Sanders suggests

10

defining "without lawful authority" as "without the authorization of the individual whose means of identification were used."

The Court will deny Mr. Sanders's request. The Fourth Circuit has explicitly approved of defining "without lawful authority" as "without the [relevant] person's consent or knowledge." *See United States v. Woods*, 710 F.3d 195, 208 (4th Cir. 2013). While this is a function of the proof at trial, for the purposes of this pretrial ruling the Court will assume that Huelskamp consented to the use of her name and digital signature in the relevant contexts, even if she did not specifically approve every such use. The Government could prove that, in this instance, Mr. Sanders's use of the online tool was not done within that authorized context and, accordingly, was not done with the consent or knowledge of Huelskamp. Again, while these issues do not seem to be contested the Court's final ruling will flow from the evidence presented at trial.

### (f) Language as to Statutory Purpose

Mr. Sanders proposes including an instruction on the purpose of the aggravated identity theft statute. Specifically, Mr. Sanders requests the following language:

> The objective of Congress in enacting section 1028A of Title 18 of the United States Code was to protect against persons who steal identities to commit terrorist acts, immigration valuations, firearms offenses, and other serious crimes.

> Congress intended the statute to prevent someone from using personal information to pass him or herself off as another person, or the transfer of such information to third parties for use in a similar manner.

(Def. Obj. at 9.) The Court will deny Mr. Sanders's request. Courts have hotly contested the legislative purpose behind § 1028A. The Court need not submit the issue to the jury. Including Mr. Sanders's language may provide some context to the charge, but that small benefit is significantly outweighed by the risk of the jury confusing Congress's legislative intent with the applicable law. The Court recognizes Mr. Sanders requested this instruction because the

11

Government proposed an instruction on the purpose of the false claims statute.  In fairness, the Court will not include instructions as to the purposes of either statute.

### III.    Conclusion

The Court expects to instruct the jury on the aggravated identity theft charge in accordance with this Memorandum.  If the Court is asked to determine, after the presentation of the Government's case in chief, whether "the evidence is insufficient to sustain a conviction" on Count 16, see Fed. R. Crim. P. 29, the legal authority and reasoning in this Memorandum will likely serve as the dispositive rubric in answering that question.  Counsel should take notice of the Court's interpretation of § 1028A and prepare their evidentiary presentations accordingly.

DATED this ___9___ day of February, 2023.

BY THE COURT:

James K. Bredar
Chief Judge

12